Gregory CHRISTOPHER, Appellant,

v.

The STATE of Texas, Appellee.

No. 05–88–00974–CR.

Court of Appeals of Texas, Dallas.

Feb. 10, 1993.

R.D. Tucker, Dallas, for appellant.

Kathleen Walsh, Dallas, for appellee.

Before LAGARDE, MALONEY and ROSENBERG, JJ.

### OPINION ON REMAND

ROSENBERG, Justice.

Gregory Christopher was convicted by a jury of three offenses of burglary of a habitation. The jury assessed punishment at fifty years' imprisonment for each offense. Upon original submission to this Court, Christopher brought three points of error claiming that the evidence was insufficient to support the convictions and that the trial court erred in refusing to quash

the jury panel and in allowing evidence of an extraneous offense to be admitted. We determined that the evidence was sufficient to sustain the conviction in this case but insufficient to sustain the convictions in the other two cases. We also held that the trial court properly refused to quash the jury panel and properly admitted the complained of evidence. Thus, we affirmed the judgment in this case, but reversed the other two judgments and entered judgments of acquittal in those cases.[1] The court of criminal appeals granted Christopher's petition for discretionary review in this case and held that the evidence was sufficient to support the conviction but the evidence of an extraneous offense was not admissible. The court of criminal appeals remanded the cause to this Court for a determination of whether Christopher suffered harm as a result of the error. We hold that the admission of evidence of the extraneous offense was harmless. Accordingly, we affirm the trial court's judgment.

The facts of the case have been previously set out in our original opinion and in the opinion of the court of criminal appeals. We shall only repeat them here to the extent necessary in disposing of the remaining issue.

The police received a report of three suspicious men traveling in a white Toyota in a residential neighborhood. The caller described their activity as stopping and knocking on doors, then running away if someone appeared. The caller described the car and gave its license number. A license check indicated that the car was taken in an aggravated robbery earlier that day. When the officers located the car, Christopher was driving. The officers ordered him to stop. Two other men were in the car. One had a television on his lap and the other had a microwave on his lap. Other property was found in the car. The men were arrested.

At trial, evidence that the car had been taken in an aggravated robbery was admitted over objection. The court of criminal

appeals determined that the admission of this evidence was an error. The only issue in this remand is whether this error was harmful.

 In determining whether the admission of this testimony was harmful to Christopher, we consider: 1) the source of the error; 2) the nature of the error; 3) whether and to what extent the State emphasized the error; 4) any collateral implications of the error; 5) the weight a juror would probably place upon the error; and 6) whether declaring the error harmless would encourage the State to repeat it with impunity. *Harris v. State,* 790 S.W.2d 568, 587 (Tex.Crim.App.1989). We do not ask whether the jury reached the correct result, but rather whether the jurors were able to properly apply the law to the facts in reaching a verdict. *Id.* at 588. We must focus on the process and not the result. *Id.* The procedure for reaching this determination isolates the error and all its effects and asks whether a rational trier of fact might have reached a different result if the error and its effects had not occurred. *Id.* If overwhelming evidence dissipates the error's effect upon the jury's function so that it did not contribute to the verdict then the error is harmless. *Id.* at 587.

 The source of the error was the testimony of the arresting officer, Clark Allen, during the presentation of the State's case. The officer testified that Christopher was driving a white Toyota that had been reported "taken in an aggravated robbery" earlier that morning. The testimony of Officer Allen on direct examination by the State was as follows:

[Prosecutor]: In terms of the license plate number, did you receive any information regarding a check on that vehicle or did you check that license number?

[Allen]: My partner did. My partner ran it and it came back taken in an aggravated robbery.

---

**1.** *See Christopher v. State,* 779 S.W.2d 459 (Tex. App.—Dallas 1989), *rev'd,* 833 S.W.2d 526 (Tex. Crim.App.1992).

[Prosecutor]: Now, that was checked right there in the vehicle on the terminal that you have?

[Allen]: Yes, ma'am.

[Prosecutor]: Did it tell you approximately what time it was taken or anything like that, or just that it was taken?

[Allen]: It did, and it was approximately four and a half to five hours earlier, but I can't tell you the exact time because I don't remember.

[Prosecutor]: Four and a half to five hours earlier that morning?

[Allen]: Yes, ma'am. I know it was after midnight. That's all I know.

On cross-examination by defense counsel, the offense was mentioned again as follows:

[Defense Counsel]: Okay. Now, even before that, before you talked to him or at least right after that, you realized that the car you were looking for had been taken in a robbery, is that right?

[Allen]: Yes, sir.

[Defense Counsel]: All right. So, when you drove around the neighborhood a little bit and spotted that car, in your mind that was—you were looking for that—a robbery case really is what you were looking for or knew that you had?

[Allen]: Up to that point, yes, sir.

Additionally, Christopher took the stand in his own defense. Much of his testimony focused on his acquisition of the car and concerned his explanation of how he borrowed the car, which contained the stolen merchandise, from a man he met at a car wash. During jury argument, counsel for defense referred to the extraneous offense once again, saying, "[b]ut we're not here on possession of stolen property, or unauthorized use of a motor vehicle or robbery of a vehicle or anything like that."

The record reveals that the State only intended to use the information to show probable cause for the stop. The State never mentioned or alluded to the extraneous offense again. However, the jury was not instructed by the court that the testimony was only before it to show probable cause.

There was no dispute that the car did not belong to Christopher. In fact, he asserted that the car was not his and the stolen property in it was there when he borrowed the car. The jury may well have inferred that Christopher took the automobile while committing an aggravated robbery and then committed the offense of unauthorized use of a motor vehicle. However, the evidence showed Christopher: (1) was apprehended while driving a car full of stolen property; (2) was apprehended two minutes away from the burglarized homes; (3) admitted that he was in possession of stolen property when arrested; and (4) had three prior burglary convictions. Because of the overwhelming evidence, we conclude that the probable impact of the extraneous offense evidence on the jury was minimal.

■ It was the defense, rather than the State, that emphasized the ownership of the car at trial. That fact, plus the State's limited reason for offering the testimony, convinces us that our finding the error harmless would not encourage the State to repeat it. Further, a defendant should not be allowed to profit by emphasizing an otherwise harmless error committed by the State or the trial court. In examining the record as a whole, we conclude that Christopher received a fair trial. The integrity of the process leading to his conviction was in no way affected by the admission of the extraneous offense. We conclude that the trial court's error in allowing testimony of an extraneous offense did not prejudice the jury's decision-making process at the guilt-innocence phase. Therefore, we hold that the error was harmless as to the jury's determination of Christopher's guilt.

■ We must also consider whether the error harmed Christopher at the punishment phase. The only evidence admitted at the punishment phase concerned Christopher's prior convictions. No defense witnesses were presented. Defense counsel's argument centered on a plea for the minimum sentence. The State, in its argument to the jury, concentrated on Christopher's prior convictions and asked the jury to sentence him to life imprisonment. Neither the State nor defense coun-

sel mentioned the extraneous offense during the punishment hearing. The jury could consider the evidence admitted at the guilt-innocence phase as well. *Wright v. State*, 468 S.W.2d 422, 424 (Tex.Crim.App. 1971). The applicable range of punishment is five to ninety-nine years or life imprisonment, and a $10,000 fine. The jury sentenced Christopher to fifty years' imprisonment and no fine. We conclude that the evidence and the State's argument emphasizing Christopher's past criminal history dissipated any effect the extraneous offense evidence admitted in the guilt-innocence phase might have had on the decision making process of the jury during the punishment phase. We hold that the trial court's error in admitting extraneous offense evidence was harmless both at the guilt-innocence phase and the punishment phase of the trial.

We affirm the judgment of the trial court.